[Docket Nos. 1, 13-14.]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

MARVELLA W.,[1]

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

Civil No. 23-21104 (RMB)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiff Marvella W. asks this Court to overturn the Commissioner of Social Security's (Commissioner) denial of her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 *et seq*.    Both the Commissioner and Marvella agree the Administrative Law Judge's (ALJ) decision denying her DIB cannot stand.  They disagree on the remedy.  The Commissioner asks this Court to remand the matter to the ALJ for more administrative proceedings.  Marvella wants this Court to remand but with instructions to award her DIB.  Marvella resists additional administrative proceedings, contending the record here—even under the ALJ's flawed residual functional capacity determination—shows that she is disabled under the Act.

For the below reasons, the Court **VACATES** the ALJ's decision and **REMANDS** this matter for more administrative proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts should refer to plaintiffs in social security disability cases by only their first names and last initials given the significant privacy concerns in these matters. *See also* D.N.J. Standing Order 2021-10.

## I. LEGAL STANDARDS

### A. Standard of Review

The Act grants federal courts limited power to review the Commissioner's decision to deny an applicant DIB.  42 U.S.C. § 405(g).  While courts conduct a plenary review of all legal issues the Commissioner decides, *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000), the Act requires courts to uphold the Commissioner's factual decisions if supported by "substantial evidence," *see* 42 U.S.C. § 405(g).  *See also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  This evidentiary threshold is "not high" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)  (internal quotation marks omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard is a deferential one, and a court cannot set aside the Commissioner's decision merely because "acting de novo [it] might have reached a different conclusion."  *See Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986).   Indeed, courts cannot "weigh the evidence or substitute [its own] conclusions for those of the [Commissioner.]"  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (first alteration in original, internal quotation marks and citation omitted).

Still, while deferential, the substantial evidence inquiry is not a perfunctory exercise to rubberstamp the Commissioner's decision.  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining the substantial evidence standard is not "a talismanic or self-executing formula for adjudication," rather, the standard requires a "qualitative exercise").   Thus, when reviewing the Commissioner's decision, courts must "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K. ex rel. K.S. v.*

*Comm'r of Soc. Sec.*, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (internal quotation marks and citation omitted).

Where, as here, the Appeals Council denies a claimant's request for a review of an ALJ's decision, the "ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The ALJ's decision must have enough information to "permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). This requires the ALJ to explain what evidence the judge considered that "supports the result" and "some indication of the evidence [the judge] rejected." *Smith v. Comm'r of Soc. Sec.*, 178 F. App'x 106, 111 (3d Cir. 2006) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Otherwise, courts "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Courts will set aside an ALJ's decision if the judge failed to consider the entire record or resolve an evidentiary conflict. *Fargnoli v. Massanari*, 247 F.3d 34, 41-42 (3d Cir. 2001).

## B. The Social Security Disability Determination

To qualify for DIB, a claimant must show she is disabled. 42 U.S.C. § 423. "Under the [Act,] a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d at 38-39 (internal quotation marks and citation omitted). "A claimant is considered unable to engage in any substantial gainful activity 'only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial

3

gainful work which exists in the national economy." *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Commissioner makes a disability determination through a five-step sequential process. 20 C.F.R. § 404.1520(a)(4). For steps one through four, the claimant bears the burden of proof. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). At the fifth step, the Commissioner shoulders the burden. *Id.* The five-steps are:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [she] is, [she] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [she] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, [she] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether [she] can perform [her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [she] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [she] cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering [her] "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v),

> 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [she] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If [she] cannot, [she] is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

## II. BACKGROUND

### A. Marvella's Application for DIB, the Commissioner's Decision, and the Administrative Hearing

Marvella applied for DIB, claiming several physical and mental conditions prevented her from working, like her mental health, depression, insomnia, anxiety, stress, bilateral shoulder tear, back injury, diabetes, and high blood pressure. [AR244.] She stopped working in September 2020 because of her conditions. [*Id.*] As part of her application, Marvella listed her prior employment in the fifteen years before she stopped working. [AR256.] She worked as a: (1) clinical support counselor from August 2015 to February 2021; (2) cash office team member from July 2011 to September 2020; (3) residential aide from July 2009 to November 2009; (4) case manager technician from January 2007 to October 2008; and (5) payment processor from June 2000 to October 2006. [*Id.*] The Commissioner denied her initial application and her reconsideration request. [AR79-83, AR90-94.] Marvella requested a hearing before an ALJ. [AR95.]

At the hearing, Marvella discussed her employment history and her job responsibilities. [AR46-AR50.] She also explained that she stopped working because she has "problems staying focused[,]" "incontinent issues[,]" difficulty reaching, and problems getting dressed. [AR50.] Marvella added she has pain in both shoulders, and she feels pain in her left shoulder when lifting that arm. [AR50-AR53.] Turning to her mental health, she

explained she is unable to "communicate properly with people in the public[,]" noting that if "somebody says something that doesn't sound right or is nasty, [she] want[s] to respond[.]" [AR53.]  She also added that she has trouble focusing and difficulty remembering.  [*Id.*]  For her incontinence, Marvella explained she has "accidents frequently" and that her doctors told her that her "bladder is [failing.]"  [AR54.]  Marvella also explained her medication makes her drowsy.  [AR54-AR55.]

After Marvella's testimony, the ALJ questioned the Vocational Expert (VE) about Marvella's work history.  [AR55-59.]    Using the Department of Labor's Dictionary of Occupational Titles (DOT), the VE classified Marvella's employment as a clinical support counselor as a home attendant, a semi-skilled position that Marvella performed at the medium to very heavy exertion level.  [AR56.]  For her position in the cash office, the VE classified it as a composite job that Marvella performed at the medium exertion level, explaining that the currency counter aspect is a semi-skilled position, and the sales attendant aspect is an unskilled position.  [*Id.*]  The VE classified Marvella's employment as a case manager technician as a case aide, a semi-skilled position that she performed at the light exertion level. [*Id.*]

The ALJ then asked the VE hypothetical questions.  [AR56-AR-59.]  For example, the ALJ asked the VE if an individual, at Marvella's age and with her education and work experience, who can perform work at the light exertion level and "can frequently climb stairs, never climb ladders, can frequently stoop, frequently crouch, frequently kneel, never crawl, . . . cannot reach overhead . . . and must avoid concentrated exposure to vibration" could perform Marvella's "past work[.]"    [AR56-57.]  The VE asserted that this hypothetical individual could only perform Marvella's past work as a case aide.  [AR57.]    The ALJ

6

changed the hypothetical slightly regarding reaching limits and added that the "individual is further limited to occasional interaction with the public and frequent interaction with coworkers." [AR58.] The VE found those added limitations would "preclude the past work as the case aid[e] . . . and [her] other past jobs[.]" [*Id.*] The ALJ then asked if there would be "any transferable skills from those past jobs . . . that would transfer to jobs that could be performed within the [last] hypothetical[?]" [*Id.*] The VE explained that the limitation on interactions with the public and coworkers "would preclude the transferability of skills." [*Id.*]

On questioning from Marvella's counsel, the VE explained that a person suffering from pain and mental health disorders who is off-task fifteen percent in a workday "on a consistent basis" could not perform "work in the national economy." [AR60.] The VE added that an individual who misses at least two days of work "on a continuing and unscheduled basis" could not work, explaining "that amount of absenteeism would . . . preclude all work in the national economy." [*Id.*]

## B. The ALJ's Decision

The ALJ found Marvella not disabled, reasoning she has the RFC to perform her past work as a case aide. [AR21-AR22.] In doing so, the ALJ found Marvella had not engaged in substantial gainful activity since September 2020 and has several severe impairments, such as degenerative disc disease, bilateral shoulder degenerative joint disease, and obesity. [AR12.] While the ALJ noted the record showed Marvella had several medical determinable impairments, the judge found them non-severe because the evidence didn't show they significantly limit her "physical and mental ability to perform work-related activities or result[] in any specific functional impairment of 12-months duration." [*Id.*] So the ALJ

classified Marvella's depression, anxiety disorder, hypertension, hyperlipidemia, diabetes, and female urethrocele as non-severe.  [*Id.*]

For example, the ALJ found Marvella's anxiety and depression non-severe because those impairments "do not cause more than minimal limitation in her ability to perform past work."  [AR13.]  Pointing to her medical records, the ALJ noted that routine physical examinations show "a normal psychological examination."  [*Id.*]  The ALJ also noted that mental status examinations were "unremarkable[,]" and that her primary care records show that Marvella's "anxiety and depression are stable with medications."  [*Id.*]  And looking to the "Paragraph B" criteria that the Commissioner uses to determine the severity of mental disorders, the ALJ found Marvella has "no more than mild limitations in [the] four broad areas of functioning." [*Id.*]

Turning to the female urethrocele, the ALJ noted that Marvella reported symptoms of urinary incontinence.  [AR14.]  Yet the ALJ found that this impairment did not meet the "12-month durational requirement."  [*Id.*]   The judge found that "this impairment is not sufficiently documented from a longitudinal perspective to support a finding that it imposes specific work-related functional limitations for 12 months or more."  [*Id.*]

At step three of the five-step sequential analysis, the ALJ determined that none of Marvella's impairments met or equaled the severity of impairments listed in the regulations.  [AR15.]  In doing so, the ALJ considered Listings 1.15 (skeletal spine disorders compromising nerve roots), 1.16 (lumbar spinal stenosis comprising the cauda equina), and 1.18 (abnormality of a major joint(s) in any extremity), but found "no evidence of the listing level severity."  [*Id.*]  For example, the ALJ found no evidence that Marvella's musculoskeletal impairments require her to need ambulation or assistive aids, like a cane.  [*Id.*]

Onto step four, the ALJ found that Marvella had the RFC to perform light work with certain limitations.  [AR16.]  In reaching this conclusion, the ALJ found that Marvella's medically determinable impairments "could reasonably be expected to cause [her] alleged symptoms[.]"  [AR17.]  But given the record, the ALJ found Marvella's statements on the "intensity, persistence, and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record[.]"  [*Id.*]

For example, the ALJ noted that Marvella had surgery in both shoulders and her post-operative records reveal that she is "progressing well."  [AR18.]  While Marvella's medical records state she continued to endorse pain after surgery, the records showed her pain improved and that she'll improve more with "continued recovery."  [*Id.*]  Turning to her degenerative disc disease, the ALJ observed that Marvella's medical records "continue to document findings of a normal gait, 5/5 muscle strength in the bilateral upper and lower extremities, normal sensation, and normal reviews of her back[.]"  [*Id.*]  All in all, the ALJ found that while the evidence supports Marvella's complaints about her shoulder and back pain, the judge noted the shoulder pain improved after surgery and "most of her physical examinations show normal muscle strength of 5/5 in the bilateral upper extremities."  [AR19.]  For her obesity, the ALJ concluded it "likely exacerbates her low back pain."  [*Id.*]  After reviewing the record, the ALJ determined objective medical evidence reflects an RFC to perform light work.  [*Id.*]

In reaching this conclusion, the ALJ found the state agency consultants' opinions "highly persuasive" and consistent with the medical evidence.  [AR20.]  The ALJ observed that one consultant found that while Marvella's right shoulder impairments and lumbar spine disorders are severe impairments, those "impairments could not prevent [her] from

performing a full range of light work." [*Id.*]  While the ALJ noted the state agency consultants did not have all of Marvella's medical records, the judge still relied on the consultants' opinions since the "updated medical records do not reveal any material change in terms of clinical presentation, course of treatment, or clinical assignments relating to [Marvella's] right shoulder impairment and lumbar spine disorder that would support deviating significantly from the physical [RFC] offered by the . . . consultants." [*Id.*]

With a RFC to perform light work, the ALJ found Marvella could perform her past work as a case aide.  [AR21.]  Pointing to the VE's testimony, the ALJ noted the VE explained that Marvella could perform her past job as a case aide at the light exertion level.  [AR22.] The ALJ found that Marvella could perform work as a case aide as it is "generally performed." [*Id.*]  Accordingly, the ALJ found Marvella not disabled.  [*Id.*]

The Appeals Council denied Marvella's request for review.  [AR1-AR6.]

## C. Marvella's Appeal and the Commissioner's Remand Motion

Marvella asks this Court to throw out the ALJ's decision, arguing the ALJ committed many errors ranging from the judge's failure to consider certain impairments, to classifying her urological/urogynecological impairments as non-severe and then failing to consider the limiting effects of those impairments in the RFC determination, to relying on the state agency consultants' opinions when the consultants didn't have all her medical records, to failing to properly evaluate her mental health impairments.  [Pl.'s Br. Pursuant to Fed. R. Civ. P. Supp. Rules for Social Security Actions under 42 U.S.C. § 405(g) 21-32 (Pl.'s Br.) (Docket No. 7).]

For example, Marvella faults the ALJ for not considering a host of medical records on her urological/urogynecological impairments that shows she received treatment for those impairments for more than a year, thus, exceeding the twelve-month durational requirement

for a disability finding.  [*Id.* at 22 (citing 42 U.S.C. § 423(d)(1)(A)).]  As another example, Marvella argues the ALJ never considered off-task time caused by her urological/urogynecological impairments, her other impairments, and the effects of her medication.  [*Id.* at 23.]  Marvella also asserts the ALJ committed reversible error by ignoring medical evidence on her mental impairments and then failing to consider the limitations of those impairments in the RFC determination.  [*Id.* at 30-31.]  She also challenges the ALJ's RFC determination of light work, arguing the judge never explained how, given her impairments and advanced age, she could perform light work.  [*Id.* at 32-33.]

Given the ALJ's errors and the record here, Marvella contends the appropriate remedy is to reverse the Commissioner's decision and award her DIB.  [*Id.*]  Marvella asserts that even under the ALJ's flawed RFC determination, the record establishes she is disabled.  [*Id.*]  Pointing to the Social Security regulation on past relevant work, Marvella argues the Commissioner can only lookback fifteen years to determine whether a social security claimant can perform past relevant work.  [*Id.* (citing 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a)).]  According to Marvella, work beyond that fifteen-year timeframe is irrelevant.  [*Id.*]  Marvella contends the record shows the only past work she can perform—even under the ALJ's inapt RFC determination—is her work as a case aide, which she performed beyond the fifteen-year lookback period.  [*Id.*]  As such, she cannot perform past relevant work and the Commissioner now shoulders the burden to show other work exists in the national economy that she can adjust to.  [*Id.* at 39.]  And under the Social Security Administration's Medical and Vocational Guidelines (Grid Rule 202.06), the Commissioner must find Marvella disabled given her advanced age, semi-skilled work experience, and lack of transferable skills.  [*Id.* (citing 20

C.F.R., Pt. 404, App'x R, Table 2, Rule 202.06).]  If the Court declines to award benefits, Marvella asks this Court to remand "with extensive legal instructions." [*Id.* at 38.]

The Commissioner doesn't defend the ALJ's decision. [Commissioner Br. in Supp. of Contested Mot. to Remand for Additional Administrative Proceedings 1-5 (Commissioner Br.) (Docket No. 13).] Rather, the Commissioner asks this Court to remand for more administrative proceedings. [*Id.* at 1.]  Given the record, the Commissioner argues the Court should not award Marvella benefits. [*Id.*]  It explains that reversal and award of benefits is appropriate "only where a fully developed administrative record demonstrates the claimant is clearly entitled to benefits, and thus a new administrative proceeding would serve no useful purpose." [*Id.* at 3 (quoting *Podedworny v. Harris*, 745 F.2d 210, 224 (3d Cir. 1984) (Adams, J., concurring)).]

In arguing for a remand, the Commissioner explains the ALJ needs to resolve conflicting evidence. [*Id.*]  For example, the Commissioner asserts that while some medical records show Marvella exhibited clinical signs of anxiety and depression, other records show "normal clinical signs." [*Id.*]   The Commissioner notes the conflicting medical evidence extends to Marvella's degenerative joint disease of the shoulders. [*Id.*]  Pointing to Marvella's post-operative medical records, the Commissioner notes the medical evidence reveals improvement in pain and range of motion. [*Id.* at 4.]  The Commissioner explains there is conflicting medical evidence for Marvella's other medically determinable impairments. [Commissioner Reply Br. in Supp. of Contested Motion to Remand for Additional Administrative Proceedings 2-3 (Commissioner Reply Br.) (Docket No. 16).]  Indeed, the Commissioner notes that Marvella's medical records reveal that she denied pain while

urinating, stress incontinence, and urinary leaking and some records state she did not use incontinence pads. [*Id.* at 2.]

The Commissioner also challenges Marvella's claim that she lacks any transferrable skills. [*Id.* at 3; *see also* Commissioner Br. at 4.] The Commissioner contends Marvella misreads the VE's testimony on transferable skills, explaining that testimony was in response to a specific hypothetical. [Commissioner Br. at 4.] According to the Commissioner, the record doesn't establish that Marvella lacks any transferrable skills and notes the VE explained Marvella's past work qualified as semi-skilled. [*Id.*] The Commissioner explains that Marvella's reliance on Social Security Ruling (SSR) 82-41's description on nurse aide positions is misplaced. [Commissioner Reply Br. at 3.] It asserts that SSR 82-41 explains a claimant's duties and skills from earlier employment will vary by individual. [*Id.*] The Commissioner explains the ALJ never performed any analysis on the transferability of Marvella's skills from her past work. [*Id.*] So given the conflicting medical evidence and the need for more administrative proceedings, the Commissioner asks for a remand. [*Id.* at 4-5; *see also* Commissioner Br. at 5.]

Marvella now cross-moves, reiterating her request for a reversal and DIB award. [Pl's Br. in Supp. of Cross-Mot. for Reversal and Award of Benefits (Pl.'s Cross-Mot. Br.) (Docket No. 15).] She advances many of her same arguments for a DIB award. [*Id.* at 8-23.] Again, even under the ALJ's flawed RFC determination, Marvella contends she is disabled under the Act. [*Id.* at 11.] Marvella points out that the Commissioner enacted a new regulation narrowing the fifteen-year lookback period for past relevant work to five-years. [*Id.* (citation omitted).] She argues the record shows she cannot perform any past relevant work within the proper timeframe (five- or fifteen-years). *Id.* Marvella again explains the record shows she

lacks any transferrable skills. [*Id.* at 12-13.]  Pointing to SSR 82-41, Marvella equates her work as a home attendant to a skilled nurse aide and explains her skills as a home attendant are non-transferable. [*Id.* at 16-18.]  Marvella also argues a DIB award is proper here to prevent further delay. [*Id.* at 20.]  Again, if the Court is unwilling to award her DIB, Marvella asks the Court to remand with specific legal instructions for the ALJ to follow and she provides a proposed order with those instructions. [*Id.* at 23-24, App. B.]

## III.  DISCUSSION

Courts will reverse the Commissioner's decision and award DIB "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (quoting *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)).  If those conditions are met and more administrative proceedings will be unproductive, courts will award DIB to prevent additional delay.  *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000); *see also Young ex rel. King v. Comm'r of Soc. Sec.*, 2009 WL 2049761, at *6-7 (D.N.J. July 7, 2009) (reversing and awarding DIB where record contained substantial evidence that claimant met the listing for epilepsy impairment and more administrative proceedings "would merely delay benefits even more").  But courts cannot award DIB and must remand for more administrative proceedings where the ALJ did not consider "all the evidence of record" because courts have "no fact-finding role in reviewing social security disability cases."  *Rangel v. Colvin*, 2016 WL 4267949, at *3 (D.N.J. Aug. 12, 2016) (quoting *Zied v. Astrue*, 347 F. App'x 862, 865 (3d Cir. 2009)).

Marvella misunderstands the Commissioner's regulations on past relevant work when claiming she is disabled under the Act because her previous employment as a case aide doesn't

14

qualify as past relevant work.  This Court cannot simply knock out her case aide work from the past relevant work equation.  First, Marvella never challenged the ALJ's consideration of her case aide work at the administrative level, and so, she waived her ability to challenge it here.  Second, her case aide work falls within the fifteen-year lookback period to determine past relevant work.

Further, Marvella's claim that she lacks any transferable skills finds no support in the record.  Marvella takes the VE's testimony out-of-context because the VE's testimony on this issue was in response to a specific hypothetical concerning limitations caused by her alleged mental health impairments.  In any event, the ALJ never made the required findings on whether Marvella has transferable skills.

### A. Past Relevant Work:  Marvella's Job as Case Aide Worker

At step four of the five-step sequential process, the ALJ must determine whether the claimant can perform past relevant work, considering her RFC.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant shoulders the burden to show she cannot perform past relevant work.  *See, e.g.*, *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000).

"Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1) (amended 2024).[2]  ALJs "usually" do not consider work that

---

[2] As Marvella notes, the Commissioner amended the regulations on past relevant work to reduce the relevant timeframe from fifteen-years to five.  *Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work*, 89 Fed. Reg. 27,653 (Apr. 18, 2024) (to be codified at 20 C.F.R. pts. 404, 416).  Those amended regulations became effective on June 22, 2024.  *Deferral of Effective Date*, 89 Fed. Reg. 48,138 (June 5, 2024).  While Marvella claims the amended regulations apply to pending claims, she makes no argument the amended regulations apply here.  The amended regulations took effect well after the Commissioner's decision denying her DIB became final.  [AR1-AR6 (Appeal Council's Decision – April 2023), AR7-AR28 (ALJ's Decision – August 2022).  Neither party has conducted a retroactivity analysis.  Absent express Congressional authorization, the Commissioner lacks the power to enact rules having retroactive effect.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules

a claimant did more than fifteen years before adjudicating a disability claim.  *Id.* § 404.1560(a) (amended 2024).  This is so because "[a] gradual change occurs in most jobs so that after [fifteen] years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply."  *Id.*  The fifteen-year timeframe is a "guide . . . intended to insure that remote work experience is not currently applied."  *Id.*  Courts recognize that the fifteen-year lookback period is not a hard-and-fast rule and recognize some work beyond that timeframe is relevant.  *See, e.g.*, *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (explaining "the fifteen year limitation described by the regulations does not create a prohibition against considering work outside that period" but "creates a 'presumption of inapplicability' of skills and abilities acquired in work performed outside the fifteen year period" (quoting *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987))); *see also Smith v. Sec'y of Health and Hum. Servs.*, 893 F.2d 106, 109 (6th Cir. 1989) (explaining the use of the word "usually" in the regulation "means that the [Commissioner] sometimes does look to work done before 15-year period" and "conclud[ing] the 15–year cutoff of § 404.1565(a) is not mandatory"); *Lichtsinn v. Astrue*, 683 F. Supp. 2d 811, 820 (N.D. Ind. 2010) (explaining "[w]ork performed outside of the fifteen year period is not automatically disqualified from consideration").

The claimant must show certain work experience does not qualify as past relevant work and thus should not be considered.  *See, e.g.*, *Smith*, 893 F.2d at 109 (explaining claimant has "burden of showing that certain experience is not past relevant work").  To determine the

---

unless that power is conveyed by Congress in express terms."); *see also* 42 U.S.C. § 405(a) (granting the Commissioner power to enact rules and regulations, but not providing express authorization to enact regulations with retroactive effect).  This Court applies the regulations on past relevant work that were on the books when the Commissioner's decision become final.  *See Christie v. Comm'r of Soc. Sec. Admin.*, 267 F. App'x 146, 147 (3d Cir. 2008).

cut-off for the fifteen-year lookback period in disability cases where the claimant has a future last insured date (as is the case here), courts look back fifteen years before "the time of adjudication at the initial, reconsideration, or higher appellate level." SSR 82-62, 1982 WL 31386, at *2 (1982).

Against that backdrop, the ALJ committed no error when considering Marvella's past work as a case aide. For starters, even if her case aide work fell outside the fifteen-year lookback period, Marvella waived any challenge to the ALJ considering it by not objecting at the administrative level. *Michelle C. v. Comm'r of Soc. Sec.*, 2022 WL 4237124, at *3-4 (D.N.J. Sept. 14, 2022) (finding plaintiff waived objection to ALJ considering work beyond fifteen-year window because plaintiff never objected to that testimony at administrative level); *see also John B. v. Kijakazi*, 2021 WL 3630307, at *15 (D.N.J. Aug. 17, 2021) (finding plaintiff waived any objection to discrepancies in VE's testimony and DOT where plaintiff never objected or challenged VE's testimony as inconsistent with DOT at administrative level); *accord Tonti v. Saul*, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("[Plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."). Marvella listed the case aide position in her work history reports, which were received into evidence with no objection. [AR256-AR263 (Exhibit 3E), AR272-AR279 (Exhibit 5E), AR306-AR313 (Exhibit 10E), AR44.] At the hearing, Marvella testified about her work as a case aide. [AR49-AR50.] And the VE classified that work and answered hypothetical questions with some responses stating the hypothetical individual could perform Marvella's past work as a case aide. [AR56-AR58.]

Yet Marvella never objected to that testimony. So she waived any challenge to it. *Michelle C.*, 2022 WL 4237124, at *3-4.

In any event, Marvella's work as a case aide is within the fifteen-year lookback period.[3] Based on her work history reports, Marvella worked as the case aide from January 2007 to October 2008. [AR256-AR263, AR272-AR279, AR306-AR313.] The ALJ issued his decision in August 2022, and the Appeals Council denied review in April 2023. [AR1-AR6, AR7-AR28.] When the Appeals Council denied review, the ALJ's decision became the Commissioner's final decision. *Matthews,* 239 F.3d at 592. Using the Appeal Council's decision date (since it's an adjudication "at the higher appellate level[,]" *see* SSR 82-62, 1982 WL 31386, at *2), Marvella's work as a case aide falls within the fifteen-year timeframe for past relevant work because she performed that job in April 2008 and continued to do so until October 2008.[4] Thus, her case aide work qualifies as past relevant work. *See Smith*, 893 F.2d at 109; *see also Calicchio v. Soc. Sec. Admin.*, 2018 WL 4057821, at *11 (N.D. Ga. Aug. 24, 2018) (finding substantial evidence supported the ALJ's finding that claimant's call center job fell within fifteen-year period for past relevant work even though she only worked a few days at the position in the relevant timeframe).

Because Marvella's work as a case aide constitutes past relevant work, her argument that she has no past relevant work even under the ALJ's flawed RFC determination fails. [Pl.'s Cross-Mot. Br. at 11-12.] Marvella must show that she lacks the RFC to perform past

---

[3] Marvella appears to start the fifteen-year lookback from 2024—the year she filed her initial brief challenging the ALJ's decision and her cross-motion for reversal and award of benefits. [Pl's Br. at 38; Pl.'s Cross-Mot. Br. at 11-12.] Given SSR 82-62, 2024 is the incorrect starting point.

[4] Some courts begin the fifteen-year lookback period from the ALJ's decision. *See, e.g., Sandidge v. Comm'r of Soc. Sec.*, 2019 WL 2346906, at *8-9 (E.D. Tenn. May 31, 2019) (starting fifteen-year lookback from ALJ's decision); *Blankenship v. Berryhill*, 2018 WL 4610651, at *11 (E.D. Va. Aug. 31, 2018) (same). Unquestionably, Marvella's work as a case aide would qualify as past relevant work if the Court started the lookback from the ALJ's decision.

relevant work. *Burnett*, 220 F.3d at 118.  She makes many arguments showing she is entitled to a more restrictive RFC because the ALJ failed to, among other things, consider certain medical evidence and limitations caused by her medically determinable impairments.  [Pl.'s Br. at 21-38.]  The Commissioner doesn't defend the ALJ's decision, arguing the Court needs to remand for more administrative proceedings.  [Commissioner Br. 1-5.]  The Court agrees that the ALJ did not consider all the evidence or explain his rationale for discounting certain medical evidence, and so, a remand is appropriate.  *Rangel*, 2016 WL 4267949, at *3.  Since the "record as a whole" does not—at this time—show Marvella "is disabled and entitled to benefits," *Brownawell*, 554 F.3d at 358, the Court denies her cross-motion for reversal and a DIB award.

### B.  Transferability of Skills

While the Court is remanding, the Court briefly addresses her argument that the VE found she lacks any transferrable skills.  [Pl.'s Cross-Mot. Br. at 11-12.]  The record doesn't support that argument and it's problematic for other reasons.

First, Marvella misreads the VE's relevant testimony.  At the hearing, the VE testified that a hypothetical person, at Marvella's age and with her education and work experience, who can only perform work at the light exertion level and is "*limited to occasional interaction with the public and frequent interaction with coworkers*[,]" could not perform Marvella's past work as a case aide.  [AR58 (emphasis added).]  The VE then added that the limitation on interactions with the public and coworkers "would preclude the transferability of skills."  [*Id.*]  So the VE did not assert Marvella lacks transferable skills across the board.

Second, the VE's testimony on the lack of transferability of skills involves a hypothetical limitation incorporating Marvella's mental health impairments. [*Id.*]  Indeed, at

the hearing, Marvella testified her mental health conditions prevent her from communicating "properly with people in the public." [AR53.] The ALJ found Marvella's mental impairments non-severe because they "cause no more than minimal limitation in her ability to perform basic mental work activities." [AR13.] The ALJ also found no indication of "more than mild limitations" with Marvella's "social interaction" because "the record consistently shows that [she] has displayed appropriate and cooperative behaviors on all occasions of treatment." [*Id.*] Marvella challenges the ALJ's findings on her mental health impairments. [Pl's Br. at 29-31.] The Commissioner explains the medical record conflicts on the severity of her mental health impairments. [Commissioner Br. at 3; Commissioner Reply Br. at 2.] For this Court to accept Marvella's transferability of skills argument, it would need to engage in factfinding, reweigh the medical evidence, and make credibility calls to determine whether her mental health impairments limit her social interaction abilities. This the Court cannot do. *Rutherford*, 399 F.3d at 552.

Third, and as the Commissioner observes, the record is not fully developed on whether Marvella has transferable skills. [Commissioner Reply Br. at 3.] Transferability of skills arises when a social security claimant has severe impairments that "prevent the performance of past relevant work . . . and that work has been determined to be skilled or semi-skilled." SSR 82-41, 1982 WL 31389, at *1 (1982). Said another way, transferability of skills comes into play at the last step of the five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4)(v). At step five, the Commissioner must show the claimant has acquired work skills that can transfer to other jobs existing in the national economy. § 404.1568(d); *see also* SSR 82-41, 1982 WL 31389, at *2. Skills—unskilled, semi-skill, or skilled—vary by individual and "[t]he claimant is in the best position to describe just what he or she did in [past relevant work], how it was

20

done, what exertion was involved, what skilled or semiskilled work [activities] were involved" and so on.  SSR 82-41, 1982 WL 31389, at *4.  The ALJ determines the "skills, levels of skills[,] and potential occupations to which skills from [past relevant work] may be transferred[.]"  *Id.*  SSR 82-41 requires ALJs to make written, factual findings when deciding whether a claimant's skills from past relevant work may be transferred to other jobs and back those findings up with evidence.  *Id.* at *7.  This requires the ALJ to identify those skills and "the specific occupations to which the acquired work skills are transferable."  *Id.*

Here, the ALJ never made any findings on whether Marvella has transferrable skills. Indeed, the ALJ stopped his analysis at step four after finding Marvella had the RFC to perform her previous job as a case aide.  [AR21-AR22.]    According to the VE, several of Marvella's past jobs qualify as semi-skilled.  [AR56.]  While Marvella may be correct that some of her skills as a home attendant may be unskilled, and therefore not transferrable, *see* SSR 82-41, 1982 WL 31389, at *3, the ALJ must make that determination, *see id.* at *7. Likewise, Marvella ignores that she may have acquired transferable skills from her cash office position, since the currency counter aspect of that job is semi-skilled.  [AR56.]  Again, the ALJ, with a VE's help, must make those calls.  SSR 82-41, 1982 WL 31389, at *7.

## IV.  CONCLUSION

Having reviewed the record and the parties' arguments, the Court finds the record does not justify reversing the Commissioner's decision and awarding Marvella DIB.  So the Court **DENIES** Marvella's cross-motion for a reversal and DIB award (Docket No. 14), and **GRANTS** the Commissioner's motion for a remand (Docket No. 13).   Marvella has submitted a proposed Order with legal instructions for the ALJ to follow on remand.  [Pl.'s Cross-Mot. Br. at 23-24, App. B.]  The Commissioner has not objected to the entry of that

Order.    The Court will enter Marvella's proposed Order.    The Court **VACATES** the Commissioner's decision and remands this matter for more administrative proceedings under 42 U.S.C. § 405(g).

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: October 21, 2024